J-A13041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: X.N.M.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 52 MDA 2023 |

Appeal from the Decree Entered December 16, 2022
In the Court of Common Pleas of York County Orphans' Court at No(s):
2022-0141a

| | | |
|---|---|---|
| IN THE INTEREST OF: E.M.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 53 MDA 2023 |

Appeal from the Order Entered December 16, 2022
In the Court of Common Pleas of York County Orphans' Court at No(s):
2022-0142

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 54 MDA 2023 |

Appeal from the Decree Entered December 16, 2022
In the Court of Common Pleas of York County Orphans' Court at No(s):
2022-143A

| | | |
|---|---|---|
| IN THE INTEREST OF: X.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 86 MDA 2023 |

Appeal from the Order Entered December 21, 2022
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000233-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 87 MDA 2023 |

Appeal from the Order Dated December 21, 2022
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000234-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: E.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 88 MDA 2023 |

Appeal from the Order Dated December 21, 2022
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000313-2021

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.                    **FILED OCTOBER 17, 2023**

D.W. ("Mother"), appeals from the December 14, 2022 decrees involuntarily terminating her parental rights to X.N.M.R. a/k/a X.R., born in July 2019, E.M.G. a/k/a E.G., born in October 2012, and A.L.R. a/k/a A.R., born in December 2020 (collectively, "the Children").[1] Mother also appeals from the December 20, 2022 orders changing Children's permanency goals from reunification to adoption and establishing a concurrent goal of placement with a legal custodian. In addition, Mother's appointed counsel, Thomas W. Gregory, Jr., Esquire ("Counsel"), has filed a petition to withdraw and accompanying brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 602 Pa. 159, 978 A.2d 349 (2009). Based on the following, we deny Counsel's petition and direct Counsel to file either a compliant Anders brief or an advocate's brief.

We glean the following factual and procedural history of this matter from the certified record. The family came to the attention of the York County Offices of Children, Youth and Families ("the Agency") in March 2021 due to a

---

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decrees the same date, the orphans' court terminated the parental rights of the putative father of X.N.M.R. and A.L.R., R.R. The court further terminated the parental rights of the father of E.M.G., G.G. Neither R.R. nor G.G. filed notices of appeal, and neither were participating parties to these appeals.

General Protective Services ("GPS") referral related to Mother's substance abuse. Specifically,

> On March 21, 2021, the Agency received a [GPS] referral for substance abuse for Mother. Allegations received were that Mother had suffered a seizure and when admitted to the hospital she was found to be positive for THC and cocaine. The Agency made contact with Mother via phone on March 22, 2021. Mother agreed to meet with the worker but would not allow the worker to see [X.N.M.R. and A.L.R.] as both parents were very upset. When the caseworker met with Mother, she admitted to cocaine use at a party over the weekend and was agreeable to drug testing. She also agreed to allow the worker to meet the children and this occurred on May 6, 2021. A referral was made to Averhealth[,] but Mother failed to report for testing. On May 10, 2021, the Agency met with Mother due to her lack of testing; she stated she tried to call in but gets busy and forgets. Mother stated she had spoken with an attorney and understood the Agency cannot force her to test. Mother denied being an everyday user of cocaine; she stated it has been in social situations without the children. Mother admitted to daily THC use. On May 14, 2021, the Agency received allegations that Mother had plans to purchase cocaine; Mother denied the allegations. A Safety Plan was initiated[,] and Mother was agreeable to the plan; the Safety Plan provided that Mother's cousin and brother were appropriate supervisors and would supervise her contact. Mother stated to the Agency that [R.R.] had physically assaulted her at the end of April and she had intentions to file a Protection From Abuse Order PFA against [R.R.]; she also alleged [R.R.] used cocaine with her in the past. On May 24, 2021, Mother contacted the Agency and advised that she was no longer in agreement with the Safety Plan; she did not feel her children were in danger. Mother stated she had been calling into Averhealth since the Safety Plan was put into place[] but had not reported for a test. Mother was a no show for testing on May 21, 2021; Mother claimed she called in but was not told to report. A referral was made for [Families United Network ("FUN")] and two attempts were made. On May 24, 2021, Mother tested positive for cocaine and THC, Mother denied cocaine use to the tester.

Stipulations of Counsel, 11/7/22, at ¶ 6; *see also* Orders of Adjudication and Disposition, 6/7/21, at 1-2. As a result, the Agency obtained emergency

protective custody of X.N.M.R. and A.L.R. on May 24, 2021, and placed them in kinship foster care with family friends. *See* Stipulations of Counsel, 11/7/22, at ¶ 7. Subsequently, the court adjudicated X.N.M.R. and A.L.R. dependent on June 7, 2021, and established a permanency goal of reunification.[2] *See* Stipulations of Counsel, 11/7/22, at ¶ 10; *see also* Notes of Testimony ("N.T."), 12/14/22, at 18-19.

> Thereafter,
>
> [o]n July 20, 2021, the Agency received a [GPS] referral regarding substance abuse by parent, lack of supervision, and homelessness. Allegations received were that [E.M.G.] resides with [G.G.] and they [were] to be evicted on July 31, 2021. Further allegations received are that [E.M.G.] is left home alone for unknown amounts of hours and/or days. Other allegations received are that crack was being used in the home.. . . On July 22, 2021, the Agency caseworker was conducting a home visit at the foster home of [E.M.G.'s] siblings, where the minor child was visiting. The Agency caseworker was informed that [E.M.G.] had stated that she has seen [G.G.] smoke cocaine. Furthermore, [E.M.G.] stated that when she had been living with her [m]other, Mother would give her "food with marijuana in it" or "blow marijuana in her face to make her go to sleep[."] The Agency caseworker attempted to contact [G.G.] and traveled to three different places in attempts to locate him. When [G.G.] called the caseworker, he hung up multiple time[s], became angry, and stated there was no reason for the Agency to be involved with his family. [E.M.G. was] to return to [G.G.]'s care on July 23, 2021.

Stipulation of Counsel, 11/7/22, at ¶ 6 (ellipsis added); *see also* Order of Adjudication and Disposition, 8/3/21, at 1. Therefore, the Agency obtained

---

[2] The court additionally established a concurrent goal of adoption. *See* Orders of Adjudication and Disposition, 6/7/21, at 3.

emergency protective custody of E.M.G. on July 22, 2021, and placed her in kinship foster care with her siblings, where all three children have remained. *See* Stipulation of Counsel, 11/7/22, at ¶ 7; N.T., 12/14/22, at 29, 36. The court adjudicated E.M.G. dependent August 3, 2021, and established a permanency goal of reunification.[3] *See* Stipulation of Counsel, 11/7/22, at ¶ 10; *see also* N.T., 12/14/22, at 19.

In furtherance of reunification, the Agency issued family service plans on July 13, 2021, March 18, 2022, May 18, 2022, and November 17, 2022. These plans were forwarded to Mother, and the objectives essentially remained consistent. *See* N.T., 12/14/22, at 19-22; *see also* Stipulations of Counsel, 11/7/22, at ¶ 13. Corresponding to the services and conditions set forth by the court at the time of adjudication, Mother was required to address, *inter alia*, her substance abuse, housing, and cooperate with services. *See* Orders of Adjudication and Disposition, 8/3/21 & 6/7/21, Appendix of Court Ordered Services & Conditions; N.T., 12/14/22, at 21; Exhibits 1, 2, 3, and 5.

Throughout the ensuing dependency proceedings, the court conducted regular review hearings at which it found Mother to be noncompliant with the permanency plan and not progressing toward alleviating the circumstances necessitating placement. *See* N.T., 12/14/22, at 20-21; *see also* Stipulations

---

[3] The court additionally established a concurrent goal of adoption. *See* Order of Adjudication and Disposition, 8/3/21, at 3.

of Counsel, 11/7/22, at ¶¶ 14, 15, 16. Moreover, the court maintained the Children's commitment and placement.

The Agency filed petitions for the involuntary termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (4), (5), (8), and (b) on August 19, 2022, as well as petitions to change the Children's permanency goals from reunification to adoption. The court held a combined hearing on the petitions on December 14, 2022. Children, who were three, ten, and two years old, respectively, were represented by both a guardian *ad litem* ("GAL") and legal counsel.[4] Mother was represented by counsel but did not appear.[5] The Agency presented the testimony of Lindsay Keller, a supervised bail probation officer with York County Adult Probation; and Vickie Weaver, ongoing caseworker. The Agency additionally proffered Exhibits 1 through 5, which were admitted without objection. *See* N.T., 12/14/22, at 9-10.

The court placed its determination and reasoning on the record at the conclusion of the hearing. *See* N.T., 12/14/22, at 120-34. By separate decrees dated December 14, 2022, and entered December 16, 2022, the court involuntarily terminated Mother's parental rights to Children. In addition, by

---

[4] In lieu of separate briefs, both the GAL and legal counsel submitted letters joining the Agency's brief. *See* Letters, 3/8/23 & 3/9/23.

[5] The court recognized notice via publication for the December 14, 2022 hearing. *See* N.T, 12/14/22, at 7-9, 122. Notably, Mother's whereabouts were unknown. *See id.* at 8. It was reported that her bail was revoked and that there was an outstanding warrant with respect to pending criminal matters. *See id.* at 8, 14.

separate orders dated December 20, 2022, and entered December 21, 2022, the court changed Children's permanency goals from reunification to adoption and instituted a concurrent goal of permanent legal custody.[6]

On January 9, 2023, Mother, through Counsel, filed timely notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) with respect to the termination decrees. She likewise filed timely notices of appeal and concise statements of errors complained of on appeal with respect to the goal change orders on January 10, 2023. This Court consolidated Mother's appeals *sua sponte* on February 3, 2023.

Thereafter, on February 17, 2023, Counsel filed a petition to withdraw, as well as an ***Anders*** brief. When counsel seeks to withdraw pursuant to ***Anders*** and its progeny,[7] this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. ***See In re Adoption***

---

[6] The court placed its determination and reasoning on the record at the conclusion of the hearing. ***See*** N.T., 12/14/22, at 120-34. This was additionally transcribed and issued as separate orders dated December 14, 2022, and entered December 20, 2022 on the orphans' court dockets, and December 21, 2022 on the juvenile division dockets. The court issued Rule 1925(a) opinions incorporating and referencing these orders and the reasoning therein.

[7] This Court extended the ***Anders*** procedure to appeals from decrees terminating parental rights involuntarily in ***In re V.E.***, 611 A.2d 1267, 1275 (Pa.Super. 1992). This Court further extended the ***Anders*** principles to appeals involving goal change orders in ***In re J.D.H.***, 171 A.3d 903, 906 (Pa.Super. 2017).

*of M.C.F.*, 230 A.3d 1217, 1219 (Pa.Super. 2020) (quoting *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa.Super. 2010)) ("We reiterate that '[w]hen presented with an *Anders* brief, this court may not review the merits of the underlying issues without first passing on the request to withdraw.'"). To procedurally withdraw, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted). Counsel must also "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa.Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for *Anders* briefs:

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 602 Pa. at 178-79, 978 A.2d at 361.

Instantly, Counsel filed a petition to withdraw, stating that the issues raised on appeal are without merit and not supported by law and, upon review of the record, there are no alternative appealable issues. **See** Application to Withdraw as Counsel, 2/17/23, at ¶¶ at 5, 6. Counsel also attached a copy of the **Millisock** letter that he sent to Mother, along with his petition and a copy of the **Anders** brief.[8] However, our review of Counsel's petition and **Anders** brief does not reflect the type of zealous review that **Anders** requires. **See Santiago**, 602 Pa. at 169, 978 A.2d at 355-56 ("[C]ounsel must consistently serve the client's interest to the best of his or her ability. Only after such an evaluation has led counsel to the conclusion that the appeal is "wholly frivolous" is counsel justified in making a motion to withdraw"). Critically, counsel has failed to attest in either his petition or brief that "after making a conscientious examination of the record, [he] has determined that the appeal would be frivolous." **Cartrette**, 83 A.3d at 1032.

Specifically, Counsel's framing of the potential issues in this matter solely advances arguments that are explicitly in favor of the termination decrees and goal change orders - arguments that are adverse to Mother's interests - rather than rendering a conclusion that any appeal would be wholly

---

[8] As required, Counsel advised Mother of her right to retain private counsel or proceed *pro se* and raise any additional points that she deems worthy of this Court's attention. **See** Application to Withdraw as Counsel, 2/17/23, at Exhibit A. Mother has not responded to this communication.

frivolous. ***See***, ***generally Anders*** Brief at 15-18. This is in direct contravention of ***Santiago***, wherein our Supreme Court reiterated:

> To repeat, what the brief must provide under ***Anders*** are references to anything in the record that might arguably support the appeal. [***Anders***, 386 U.S. at 744; ***Commonwealth v. McClendon***, 495 Pa. 467, 434 A.2d 1185 (1981)]. Indeed, we have recognized and emphasized the difference between an ***Anders*** brief, which offers an issue for a court's consideration, but reflects counsel's candid assessment of the complete lack of merit in his client's case, and a merits brief, which implies that an issue is worthy of review and has some chance of succeeding. ***See*** [***Smith v. Pa. Bd. of Prob. & Parole***, 524 Pa. 500, 511, 574 A.2d 558, 564 (1990)] ("By filing an ***Anders*** brief, a lawyer does not advocate arguments he believes are 'wholly frivolous'; rather, he presents them for the court's confirmation of his belief.").

***Santiago***, 602 Pa. at 176, 978 A.2d at 359-60.

In so doing, Counsel has focused exclusively upon the reasons that exist for affirming the trial court's holdings while declining to address the issues that might support Mother's appeal, *e.g.*, the issues identified in her Rule 1925(a)(ii) and (b) statements. We discern that counsel has largely failed to recognize the distinction between issues that may lack merit and truly frivolous claims. ***See Commonwealth v. Hipps***, 274 A.3d 1263, 1271 n.3 (Pa. Super. 2022) ("[F]rivolousness is a slightly higher standard than lack of merit; an argument may be meritless, but not frivolous.").

Overall, our review of Counsel's ***Anders*** submissions cannot confirm that Counsel has conducted the kind of zealous review that would permit him to conclude that Mother's appeal is wholly frivolous. ***Compare Anders*** Brief at 15-18 ***with Santiago***, 602 Pa. at 177, 978 A.2d at 360 ("Without [referring

to anything in the record that Counsel believes arguably supports the appeal or stating that there were no such references for him to make], we are not assured, as **Anders** requires, that counsel fully performed his [or her] duty as [the appellant's] advocate to independently search the record as a trained advocate with an eye to uncovering appealable error, before concluding that [the appellant's] appeal was frivolous."). We therefore cannot determine that Counsel fully performed his duty[9] and that Mother's right to counsel has been properly vindicated. **See id.** at 177, 978 A.2d at 360 ("Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal."). Thus, Counsel's brief does not substantially satisfy the **Anders** procedure.

Accordingly, we deny Counsel's petition for leave to withdraw. Counsel shall file either (1) another **Anders** brief that conforms to the requirements set forth in **Santiago**, **supra**; or (2) an advocate's brief on Mother's behalf. We grant Counsel 30 days from the date of this decision to file either an **Anders** brief or an advocate's brief. If Counsel files an advocate brief,

---

[9] As the Court stated in **Santiago**, "[a]lthough an indigent whose appeal is frivolous has no right to have an advocate make his case to the appellate court, such an indigent does, in all cases, have the right to have an attorney, zealous for the indigent's interests, evaluate his case and attempt to discern nonfrivolous arguments." **Commonwealth v. Santiago**, 602 Pa. 159, 173, 978 A.2d 349, 357-58 (2009) (quoting **Smith v. Robbins**, 528 U.S. 259 (2000)).

Appellees shall have 30 days thereafter to file a supplemental response brief, should they decide one is warranted.

Petition denied with instructions. Panel jurisdiction retained.